UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

STEVEN O. ROBINSON,

                Plaintiff,

        -against-

POLICE OFFICER DOUGLAS ROME,
DISTRICT ATTORNEY RICHARD A.
BROWN, SERGEANT PATRICK CAIN,
ASSISTANT DISTRICT ATTORNEY
GRETCHEN ROBINSON, POLICE
OFFICER CHRIS DELASANDRO,
ASSISTANT DISTRICT ATTORNEY
CHRISTINE OLIVERI, RAYMOND W.
KELLY, MAYOR MICHAEL R.
BLOOMBERG, and BETSY GOTBAUM,

                Defendants.

-----------------------------------------------------------X

**MEMORANDUM & ORDER**

**11-CV-1411 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff pro se Steven O. Robinson ("Robinson"), currently incarcerated at Wallkill Correctional Facility, brings this civil rights action pursuant to 42 U.S.C. § 1983. (Compl. (Docket Entry # 1).) Robinson's request to proceed in forma pauperis pursuant to 28 U.S.C. § 1915 is granted. For the reasons stated below, Robinson's claims against Mayor Michael R. Bloomberg, Police Commissioner Raymond W. Kelly, former Public Advocate Betsy Gotbaum, District Attorney Richard A. Brown, and Assistant District Attorneys Gretchen Robinson and Christine Oliveri ("the ADAs") are dismissed. Robinson's remaining claims against Sgt. Patrick Cain and Police Officers ("POs") Douglas Rome and Chris Delasandro may proceed.[1]

---

[1] According to Robinson, PO Rome worked at the 101st Precinct in Queens, New York, until he was suspended, and his shield number is 31085; PO Delasandro works at the 101st Precinct and his shield number is unknown to Robinson; Sgt. Cain works at the 101st Precinct and his shield number is 1702. (Compl. at 3.)

1

I. **BACKGROUND**

Robinson alleges that, on April 24, 2008, he was arrested, without probable cause, by Defendants PO Rome and Sgt. Cain, who used excessive force against him, failed to allow him to seek treatment for his injuries, and unnecessarily kept him handcuffed behind his back at the police precinct. (Compl. ¶¶ 1-13, 16-17, 49-56, 82-83.) PO Rome later stated, in a criminal complaint and in front of the grand jury, that he had found a gun on Robinson's person while arresting him and had seen Robinson discard a bag, in which a second gun was found. (Id. ¶¶ 14-15, 18, 20-23.) Robinson alleges that PO Rome's statement that he had seen Robinson discard the bag was false, and that, by making such a false statement in the criminal complaint and to the grand jury, PO Rome violated Robinson's right to due process. (Id. ¶¶ 67, 74.)

Robinson alleges that Defendant PO Delasandro, who prepared paperwork relating to the arrest and who was present at the scene of the arrest, wrote down his initials on evidence recovered at the scene even though he had not actually found the items. (Id. ¶¶ 30-32, 57-58, 60.) Robinson alleges that this constituted "deliberate indifference" to Robinson's due process rights. (Id. ¶ 58.) PO Delasandro also observed a group of "teenagers" at the scene who, Robinson implies, may have actually possessed the bag containing the gun. (Id. ¶ 42.) Robinson alleges that PO Delasandro violated Robinson's due process rights by failing to investigate those teenagers. (Id. ¶ 65.)

The two guns the police found at the scene of Robinson's arrest were never tested for DNA or fingerprints. (Id. ¶¶ 19, 36-39.) Robinson alleges that the failure to conduct such tests was attributable to a New York Police Department ("NYPD") policy under which such tests are not carried out where an officer actually sees the gun in question on the suspect's person. (Id. ¶¶ 27-29.) According to Robinson, POs Rome and Delasandro and Sgt. Cain violated his due

2

process rights when they failed to test the guns for fingerprints or DNA, as per the NYPD policy. (Id. ¶¶ 59-61.) Robinson alleges that Police Commissioner Raymond Kelly violated his due process rights by "issuing, enforcing or not knowing of" this policy, and that former public advocate Betsy Gotbaum and Mayor Michael Bloomberg violated his due process rights because they "kn[ew] or should have known" of the policy. (Id. ¶¶ 62-64.)

Robinson also alleges that ADAs Robinson and Oliveri violated his due process rights by failing to sufficiently investigate his case; failing to preserve evidence; relying on false evidence; failing to disclose exculpatory evidence at the grand jury and at trial; and making an improper summation. (Id. ¶¶ 44-47, 66, 68-77, 81.) Robinson also alleges that District Attorney Richard A. Brown violated Robinson's due process rights by failing to properly supervise or train ADAs in his office with respect to proper investigation, the preservation of evidence, and the disclosure of exculpatory evidence. (Id. ¶¶ 78-80.)

According to Robinson, he was acquitted of all charges relating to the gun found in the bag, but convicted of two "lesser charges on the other weapon discovered." (Id. ¶ 48.)

## II. STANDARD OF REVIEW

The court is mindful that, because Robinson is proceeding pro se, his Complaint should be held "to less stringent standards than formal pleadings drafted by lawyers." Hughes v. Rowe, 449 U.S. 5, 9 (1980); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). Under 28 U.S.C. § 1915A, a district court, before requiring any response from defendants, "shall" dismiss the complaint sua sponte "if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

## III. DISCUSSION

### A. Claims Against POs Rome and Delasandro and Sgt. Cain

The court finds that Robinson has adequately stated claims against POs Rome and Delasandro and Sgt. Cain. Robinson has stated a claim that PO Rome and Sgt. Cain violated his constitutional rights under the Fourth and Fourteenth Amendments by using excessive force against him. See Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) ("The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest.") (citing Graham v. Connor, 490 U.S. 386, 395 (1989)); see also Mapp v. Ohio, 367 U.S. 643, 655 (1961) (finding the Fourth Amendment enforceable against the States through the Due Process Clause of the Fourteenth Amendment). Robinson has also stated a claim that POs Rome and Delasandro and Sgt. Cain violated his constitutional rights under the Fourth and Fourteenth Amendments by arresting him without probable cause and/or participating in or supervising that arrest.[2] See Jaegly v. Couch, 439 F.3d 149, 151 (2d Cir. 2006) ("[The] Fourth Amendment right to remain free from unreasonable seizures . . . includes the right to remain free from arrest absent probable cause."). And Robison has stated a claim that PO Rome violated his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments by fabricating evidence that resulted in the deprivation of Robinson's liberty. See Zahrey v. Coffey,

---

[2] Robinson's claims against PO Delasandro focus on two things. First, Robinson notes PO Delasandro's initialing of evidence he had not actually found. Such conduct simply does not independently violate any constitutional rights. Second, Robinson claims that PO Delasandro failed to investigate a group of teenagers he saw near the scene of Robinson's arrest. Such failure to investigate is also not an independent constitutional violation. A police officer's failure to pursue a particular investigative path is not a constitutional violation to the extent probable cause to arrest independently exists. Stokes v. City of N.Y., No. 05-CV-007 (JFB), 2007 WL 1300983, at *6 (E.D.N.Y. May 3, 2007) ("[I]t is well-settled that there is no independent claim for a police officer's purported failure to investigate."). To the extent that probable cause did *not* exist, this forms the basis for the separate claim of arrest without probable cause. Though the complaint is not precise on this point, the court finds that it can be read to allege that PO Delasandro was responsible, along with PO Rome and Sgt. Cain, for Robinson's arrest without probable cause. See McEachin, 357 F.3d at 200 (the Second Circuit has "frequently reiterated that *sua sponte* dismissal of *pro se* prisoner petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored") (internal alterations and quotation marks omitted).

4

221 F.3d 342, 348 (2d Cir. 2000) (describing constitutional right, sounding under common-law cause of action for malicious prosecution, "not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity"); Rohman v. N.Y.C. Transit Auth., 215 F.3d 208, 215 (2000) ("The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty."); Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997) ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial[.]").

### B. Claims Against Commissioner Kelly, Former Public Advocate Gotbaum, and Mayor Bloomberg

Robinson alleges that the NYPD has a policy of not testing guns for DNA or fingerprints where a police officer has observed the gun on the suspect's person. It is apparent that such a policy, assuming it in fact exists, is not, in itself, unconstitutional. The NYPD is entitled to allocate its resources as it sees fit and is not required to run further tests in order to determine the ownership of a gun where a police officer knows first-hand that the gun was on the suspect's person. See Arizona v. Youngblood, 488 U.S. 51, 58-59 (1988) (concluding that "the police do not have a constitutional duty to perform any particular tests," even where the prosecution relies solely on police observation of the events in question). Because Robinson has not adequately stated a claim that the alleged policy is unconstitutional, he cannot proceed with claims against Commissioner Raymond Kelly, former Public Advocate Betsy Gotbaum, or Mayor Michael Bloomberg for promulgating, knowing of, or constructively knowing of such a policy.

5

### C. Claims Against the ADAs

Robinson alleges that ADAs Robinson and Oliveri violated his due process rights by failing to sufficiently investigate his case, failing to preserve evidence, relying on false evidence, failing to disclose exculpatory evidence, and making an improper summation. Prosecutors are absolutely immune from suit to the extent that their conduct is "prosecutorial"—as opposed to "investigative"—in nature. See Zahrey, 221 F.3d at 346 ("The nature of a prosecutor's immunity depends on the capacity in which the prosecutor acts at the time of the alleged misconduct. Actions taken as an advocate enjoy absolute immunity, while actions taken as an investigator enjoy only qualified immunity.") (internal citations omitted). The conduct Robinson alleges as to the ADAs was clearly "prosecutorial," and thus Robinson's claims against ADAs Robinson and Oliveri must be dismissed. See Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976) (granting prosecutors absolute immunity for their conduct "in initiating a prosecution and in presenting the State's case"). Such immunity covers the ADAs' alleged failure to sufficiently investigate Robinson's case. See Crews v. County of Nassau, No. 06-CV-2610 (JFB), 2007 WL 4591325, at *14 (E.D.N.Y. Dec. 27, 2007); see also Broam v. Bogan, 320 F.3d 1023, 1029 (9th Cir. 2003) ("A prosecutor is absolutely immune from liability for failure to investigate the accusations against a defendant before filing charges.").

### D. Claims Against District Attorney Brown

Finally, Robinson alleges that District Attorney Richard Brown violated Robinson's right to due process by failing to properly supervise or train prosecutors with respect to investigation, evidence preservation, and the disclosure of exculpatory evidence.

In general, it is possible for a § 1983 plaintiff to hold a district attorney liable, under Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978), for

constitutional violations committed by subordinate prosecutors. Such liability may be based on the district attorney's failure to train his employees. As the Supreme Court stated in Connick v. Thompson, 131 S.Ct. 1350 (2011), "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Id. at 1359. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. To prevail on a failure-to-train theory, the plaintiff must show that the failure amounted to the policymaker's "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Id. (quoting Canton v. Harris, 489 U.S. 378, 388 (1989)). Ordinarily, to prevail on such a theory, the plaintiff must prove "a pattern of similar constitutional violations by untrained employees." Id. at 1360.

Hypothetically, and "in a narrow range of circumstances," a plaintiff could prove a policymaker's liability based on a "single incident," where constitutional violations of the kind to which the plaintiff was subjected were the "highly predictable consequence" of the failure to train. Id. at 1361 (citing Canton, 489 U.S. at 390 n.10). The Connick Court concluded, however, that there can be no such liability in the context of prosecutors' failures to turn over material exculpatory material to the defense, as required by Brady v. Maryland, 373 U.S. 83 (1963). Id. at 1361-64. The Court emphasized the training regime that all lawyers, including prosecutors, undergo—in law school and through required continuing legal education—such that they are presumptively able to "apply legal principles, understand constitutional limits, and exercise legal judgment." Id. In light of that training, as well as the ethical obligations required of lawyers, Brady violations committed by prosecutors, the Court held, are not the "obvious consequence" of a district attorney's failure to provide additional training. Id.

7

Because Robinson has not alleged a "pattern" of similar violations, the Court's holding in Connick directly invalidates his claim that District Attorney Brown should be held liable for failing to train the ADAs as to their responsibilities to turn over exculpatory evidence under Brady. Connick's holding also applies to Robinson's claim that Brown should be held liable for failing to train ADAs to properly investigate cases—a claim that can be read expansively to allege that, due to lack of training, ADAs under Brown's supervision went forward with prosecutions even though they knew, or should have known, that probable cause was lacking. Without proving a pattern of such violations, Robinson cannot prove that the alleged violation in his case was the "obvious consequence" of such lack of training, given that prosecutors can be expected to know, without additional training, that prosecutions should only be brought when sufficient evidence of guilt exists. Finally, Connick's holding applies to Robinson's claim that Brown should be held liable for failing to train ADAs to properly preserve evidence. Indeed, Connick's holding is strongest in this context, since a plaintiff must show bad faith on the part of the individual law enforcement official to state a constitutional claim based on the official's failure to preserve evidence. See Youngblood, 488 U.S. at 57-58. Clearly, even in the absence of additional training, it would not be "highly predictable" that prosecutors would act in bad faith in failing to preserve evidence.

Therefore, Robinson's claims against District Attorney Richard Brown are dismissed.

## IV. CONCLUSION

For the reasons stated above, Robinson's claims against Mayor Michael Bloomberg, Police Commissioner Raymond Kelly, former Public Advocate Betsy Gotbaum, District Attorney Richard Brown, and ADAs Gretchen Robinson and Christine Oliveri are DISMISSED.

No summonses shall issue as to these Defendants. Robinson's claims against POs Douglas Rome and Chris Delasandro and Sgt. Patrick Cain may proceed as consistent with this opinion.

The United States Marshals Service is directed to serve summonses, Robinson's Complaint, and this Order upon POs Douglas Rome and Chris Delasandro and Sgt. Patrick Cain, without prepayment of fees. A courtesy copy of the same papers shall be mailed to Corporation Counsel of the City of New York. The case is referred to Magistrate Judge Lois Bloom for pretrial supervision. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 269 U.S. 438, 444-45 (1962).

SO ORDERED.

/S/

Dated: Brooklyn, New York
April 20, 2011

NICHOLAS G. GARAUFIS
United States District Judge